## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FELLOWSHIP OF CHRISTIAN ATHLETES,** *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **No. 1:24-cv-01332-DLF** |
| **DISTRICT OF COLUMBIA,** *et al.*, | |
| **Defendants.** | |

## <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>

Plaintiffs Fellowship of Christian Athletes (FCA-National) and Fellowship of Christian Athletes of Jackson-Reed High School (FCA-Jackson Reed) brought this suit alleging that the District of Columbia (the District) through the District of Columbia Public Schools (DCPS), Chancellor Lewis D. Ferebee, and Chief Integrity Officer (CIO) Cinthia L. Ruiz denied FCA Jackson-Reed recognized status as a student group in violation of the Constitution, the Religious Freedom Restoration Act, the Equal Access Act, and the D.C. Human Rights Act, based on FCA's requirement that their student leaders share their religious beliefs. DCPS has now amended its policies governing student organizations to make explicitly clear that DCPS schools cannot bar religious student groups from limiting admission or giving preference to persons of the same religion. This change in policy renders Plaintiffs' requests for injunctive and declaratory relief moot, because the District has already provided them with the equitable relief they sought.

Defendants also move under Rule 12(b)(6) to dismiss Plaintiffs' Fifth Amendment Due Process claim because even as alleged, Plaintiffs received notice and an opportunity to be heard before their official status as a recognized student group was revoked. Further, because

Chancellor Ferebee and CIO Ruiz are entitled to qualified immunity, the Court should dismiss

the claims against them in their individual capacities.  The claims against Chancellor Ferebee in

his individual capacity should also be dismissed because the Complaint contains no allegations

about his individual conduct.  Finally, the Court should dismiss the claims against Chancellor

Ferebee and CIO Ruiz in their official capacities because those claims are duplicative of the

claims against the District.[1]

**BACKGROUND**

I.    **DCPS's Policy Governing Discrimination at DCPS Schools and FCA-Jackson Reed**

     In October 2021, DCPS adopted an Anti-Discrimination Policy to convey "DCPS's

prohibition on discrimination of all kinds."  *See* District of Columbia Public Schools, *Anti-*

*Discrimination Policy: Students* (Oct. 1, 2021) at 1, available at https://dcps.dc.gov/sites/

default/files/dc/sites/dcps/publication/attachments/Anti-Discrimination-Policy_Students.pdf.

The 2021 Policy stated that:

> DCPS strictly prohibits discrimination against . . . students on the
> basis of actual or perceived race, color, religion, national origin, sex
> (including pregnancy), age, marital status, personal appearance,
> sexual orientation, gender identity or expression, family status,
> family responsibilities, matriculation, political affiliation, genetic
> information, disability, source of income, status as a victim of an
> intrafamily offense, or place of residence or business.

*Id.* at 3.  The Anti-Discrimination Policy contained no exemptions.  After receiving a grievance

from a faculty member about FCA-Jackson Reed and conducting an initial review, DCPS's

CARE Team informed Jackson-Reed High School to temporarily cease operation of FCA-

Jackson Reed during the grievance proceedings.  Compl. ¶¶ 77, 82.  After completing its

investigation, the CARE Team issued its decision on November 21, 2022, finding the allegations

of discrimination substantiated because FCA asked its student leaders to affirm their

---

[1]     At this point, the District is not moving to dismiss Plaintiffs' claims to the extent they seek damages, with the exception of Count IX.  *See infra* Argument II.

commitment to FCA's statements of purity which included discrimination based on sexual

orientation and ordering Jackson-Reed High School to disassociate from FCA. *See* Pls.' Appl.

for Prelim. Inj., Rich Decl. Ex. E [3-15] (initial CARE decision) at 3–4.

      In November 2024, DCPS created an exception to the Anti-Discrimination Policy for

religious groups. *See* Ex. A, Declaration of Glenn Starnes II (Stares Decl.) ¶ 6. DCPS's *Student*

*Organizations and Clubs Guidance* which governs all student groups on DCPS campuses now

explicitly states that:

> Nothing in this guidance permits a DCPS school to bar any religious
> organization, or any organization operated for educational purposes,
> which is operated, supervised or controlled by or in connection with
> a religious organization, from limiting admission to or giving
> preference to persons of the same religion as calculated by the
> organization to promote the religious principles of the organization.

Ex. B, District of Columbia Public Schools, *Student Organizations and Club Guidance*, also

available at https://dcps.dc.gov/publication/student-organizations-and-clubs-guidance, at 2.

DCPS circulated this Guidance to DCPS faculty on November 22, 2024. Starnes Decl. ¶ 6. In

Academic Year 2024–2025, no application for recognition by a Fellowship of Christian Athletes

student group has been denied by a DCPS school. *Id.* ¶ 8. FCA-Jackson Reed is currently a

recognized student group. *See* Jackson-Reed High School, FCA (Fellowship of Christian

Athletes) Club Page, https://jacksonreedhs.org/students/clubs-extracurricular-

activies/entry/545121/.

## II.   <u>Procedural History</u>

      Plaintiffs filed their complaint on May 7, 2024, bringing twelve constitutional and

statutory claims. *See* Compl. [1]. Plaintiffs moved for a preliminary injunction the same day.

Pls.' Appl. for Prelim. Inj. [3]. After briefing and oral argument, the Court granted in part and

denied in part Plaintiff's motion for preliminary injunction on July 11, 2024. *See* Order [25].

The Court found that Plaintiffs had demonstrated a likelihood of success on the merits of their

claims under the Religious Freedom Restoration Act and Free Exercise Clause, *see* Mem. Op. [26] at 31, and ordered the District to "restore official recognition" to FCA-Jackson Reed, and not to exclude FCA-Jackson Reed because of its leadership selection practices. *See* Order [25].

## LEGAL STANDARDS

I.    **Federal Rule of Civil Procedure 12(b)(1)**

A party may move to dismiss an action or claim under Rule 12(b)(1) when the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "If the [C]ourt determines at any time that it lacks subject-matter jurisdiction, [it] must dismiss the action." Fed. R. Civ. P. 12(h)(3). Because federal courts are courts of limited jurisdiction, the law presumes that "a cause lies outside this limited jurisdiction." *Rasul v. Bush*, 542 U.S. 466, 489 (2004) (quotations and citation omitted). The plaintiff bears the burden of establishing jurisdiction. *Bronner on Behalf of Am. Stud. Ass'n v.* Duggan, 962 F.3d 596, 602 (D.C. Cir. 2020). "A motion to dismiss for mootness is properly brought under Rule 12(b)(1) because mootness itself deprives the court of jurisdiction." *Indian River Cnty. v. Rogoff*, 254 F. Supp. 3d 15, 18 (D.D.C. 2017); *see also Conservation Force, Inc. v. Jewell*¸733 F.3d 1200, 1204 (D.C. Cir. 2013) (quoting *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983)) ("Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies."); U.S. Const. art. III, § 2. And the Court must assess mootness "at 'all stages of review, not merely at the time the complaint is filed.'" *Noble v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 285 F. Supp. 3d 128, 132 (D.D.C. 2018) (quoting *Decker v. Nw. Env't Def. Ctr.*, 568 U.S. 597, 609 (2013)). Finally, "in deciding a 12(b)(1) motion, a court need not limit itself to the complaint; rather, it 'may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction in the case.'" *Toth v. Wells Fargo Bank, N.A.*, 82 F. Supp. 3d 373, 376 (D.D.C. 2015) (citations omitted).

## II.  <u>Federal Rule of Civil Procedure 12(b)(6)</u>

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Courts need not accept a plaintiff's conclusory allegations and legal conclusions as true. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678–79.

## ARGUMENT

## I.  <u>Plaintiffs' Claims for Injunctive and Declaratory Relief Should Be Dismissed as Moot Because DCPS's Amended Policy Permits Religious Organizations to Select Their Leaders Based on Shared Religious Beliefs.</u>

The most fundamental limit to federal court authority is supplied by Article III of the Constitution and provides that the federal judicial power reaches only "Cases" and "Controversies." U.S. Const. Art. III, Sec. 2; *see Clapper v. Amnesty Int'l*, 568 U.S. 398, 408 (2013) ("[n]o principle is more fundamental"). "[M]ootness, however it may have come about, simply deprives [a court] of [the] power to act; there is nothing for [it] to remedy, even if [it] were disposed to do so. [Courts] are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." *Spencer v. Kemna*, 523 U.S. 1, 18 (1998). In other words, "[i]f events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot. This requirement applies independently to each form of relief sought and subsists through all stages of federal judicial proceedings, trial and appellate." *McBryde v. Comm. to Rev. Cir. Council Conduct and Disability Orders of Jud. Conf. of U.S.*, 264 F.3d 52, 55 (D.C. Cir. 2001) (internal quotation marks and citations omitted), *cert. denied,* 537 U.S. 821 (2002).

"The promulgation of a superseding policy or program can have the power to moot a challenge to the old one." *Citizens for Responsibility and Ethics in Washington v. Wheeler*, 352 F. Supp. 3d 1, 11 (D.D.C. 2019); *see also Amer. Bar. Assoc. v. FTC*, 636 F.3d 641, 647–48 (D.C. Cir. 2011) ("It is well established that a case must be dismissed as moot if new legislation addressing the matter in dispute is enacted while the case is still pending." (citing *Dep't of Treasury v. Galioto*, 477 U.S. 556, 559–60 (1986) and *Clarke v. United States*, 915 F.2d 699 (D.C. Cir. 1990) (*en banc*))); *Akiachak Native Cmty. v. United States Dep't of Interior*, 827 F.3d 100, 113 (D.C. Cir. 2016) (discussing the "perfectly uncontroversial and well-settled principle of law [that] when an agency has rescinded and replaced a challenged regulation, litigation over the legality of the original regulation becomes moot").

### A.     DCPS's Change of Policy Renders Plaintiffs' Requests for Injunctive and Declaratory Relief Moot.

In their Complaint, Plaintiffs ask the Court to enjoin Defendants from enforcing DCPS's anti-discrimination policies or the District of Columbia Human Rights Act (DCHRA) against them for "requiring that student leaders agree with Plaintiffs' religious beliefs." *Id.* (Prayer for Relief ¶¶ d–e). Plaintiffs also seek declarations stating that various constitutional provisions, federal statutes, and the DCHRA "require Defendants to stop discriminating against Plaintiffs and to stop withholding recognized status on the basis of their beliefs and leadership selection policies," that the First Amendment and District law "protect Plaintiffs' right to select religious leaders who share their faith," and that District law may not be applied against Plaintiffs in a manner violative of their constitutional rights. *See* Compl. at 45 (Prayer for Relief ¶¶ a–c). DCPS's change in policy has provided Plaintiffs with the exact injunctive relief they seek: Plaintiffs can now require that their student leaders share their religious beliefs without having the Anti-Discrimination Policy or DCHRA enforced against them by DCPS. *See* Ex. B at 2.

FCA-Jackson Reed is an official recognized student organization at Jackson-Reed High School. *See* Jackson-Reed High School, FCA (Fellowship of Christian Athletes) Club Page, https://jacksonreedhs.org/students/clubs-extracurricular-activies/entry/545121/.  FCA chapters are also recognized at other DCPS campuses.  *Cf.* Starnes Decl. ¶ 8.

　　　In short, the intervening event here—the change in DCPS policy and practice—make it "impossible for [the] court to grant any effectual [prospective] relief," because the District has already effected the change that Plaintiffs request.  *Chafin v. Chafin*, 568 U.S. 165, 172 (2013); *see also Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 91 (D.C. Cir. 1986) (dismissing case as moot because the court "cannot order the appellee departments to do something they have already done").  Further, the specific declaratory judgments Plaintiffs seek are forward looking, yet relate to policies and practices that are no longer in effect.  *See* Compl. at 45 (Prayer for Relief ¶¶ a–c).  District policy now allows religious student groups to select religious leaders who share their faith, so any declaratory judgment about whether the First Amendment and District law "protect Plaintiffs' right to select religious leaders who share their faith," and whether District law "may not be applied against Plaintiffs in a manner violative of their constitutional rights," *id.*, would be only advisory.  *See Planned Parenthood of Wis., Inc. v. Azar*, 942 F.3d 512, 516 (D.C. Cir. 2019) ("[B]ecause the [challenged policy] is now inoperative, a declaration that it was unlawful would amount to nothing more than an advisory opinion." (quoting *NRDC v. NRC*, 680 F.2d 810, 814–15 (D.C. Cir. 1982)); *NBC-USA Hous., Inc. v. Donovan*, 674 F.3d 869, 873 (D.C. Cir. 2012) ("Where an intervening event renders the underlying case moot, a declaratory judgment can no longer affect the behavior of defendants toward the plaintiff, and thus affords the plaintiff no relief whatsoever.") (internal citations and alterations omitted).

In some cases, an intervening change in policy may be insufficient to moot a claim. *Am. Freedom Def. Initiative v. Wash. Metro. Area Transit Auth.* (*AFDI*), 901 F.3d 356, 362 (D.C. Cir. 2018). But when, as here, the policy change "completely or irrevocably eradicated the effects of the alleged violation" by providing the relief requested by Plaintiffs, there is no longer additional meaningful prospective relief for the Court to grant. *Id.*; *see also LaRoque v. Holder*, 679 F.3d 905, 909 (D.C. Cir. 2012) (dismissing as moot because plaintiffs "have obtained everything they could recover from this lawsuit"); *Akiachak Native Community v. U.S. Dep't of Interior*, 827 F.3d 100, 106 (D.C. Cir. 2016) ("[T]he scope of a federal court's jurisdiction to resolve a case or controversy is defined by the affirmative claims to relief sought in the complaint."). DCPS's policy now prohibits DCPS schools from barring religious organizations because they limit admission or give preference to persons with the same religious beliefs. *See* DCPS Student Organization Guidance at 2. The Court should thus dismiss as moot Plaintiffs' claims to the extent they seek prospective injunctive and declaratory relief. *See McBryde*, 264 F.3d at 55.

### B.    The Voluntary Cessation Exception Does Not Apply.

When a lawsuit accuses a defendant of ongoing misconduct, the defendant's voluntary cessation of that conduct will moot the case only when the defendant shows (1) "there is no reasonable expectation . . . that the alleged violation will recur," and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Aref*, 833 F.3d at 251; *see also Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (alteration omitted)). The party asserting mootness has the burden to show that the conduct cannot be expected to recur, *see United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953), but courts have repeatedly found that there is "less concern about the recurrence of objectionable behavior" when the defendant is a government actor rather than a private litigant.

*Citizens for Responsibility & Ethics in Wash. v. United States SEC*, 858 F. Supp. 2d 51, 61–62 (D.D.C. 2012) (listing cases); *see Toriano v. Supervisor of Elections*, 382 F.3d 1276, 1283 (11th Cir. 2004) ("[W]hen the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will not recur."). In fact, "well-settled case law . . . requires a court to presume that government officials will conduct themselves properly and in good faith . . . ." *In re Navy Chaplaincy*, 850 F. Supp. 2d 86, 94 (D.D.C. 2012).

There is no reasonable expectation that the District will deny FCA-Jackson Reed—or any other FCA chapter at a DCPS school—recognized status as a student group because of their leadership selection process given the change in DCPS policy. In addressing whether an alleged violation is likely to recur, courts look at whether the regulatory regime replacing the challenged one is "fundamentally similar." *Am. Freedom Def. Initiative v. Wash. Metro. Area Transit Auth.*, 901 F.3d 356, 362 (D.C. Cir. 2018). Here, the new policy is fundamentally different: where the old policy did not provide *any* exceptions to its prohibitions on discrimination, the new policy explicitly adopts the exception that Plaintiffs sought. *See supra* Background I. There is nothing to suggest that DCPS will revert to its old policy, let alone that such an outcome is likely. *See* Starnes Decl. ¶ 7 (confirming DCPS has no intention of changing its policy). And while speculation about future unlawful action "might be sufficient were [d]efendants private litigants, such conjecture is insufficient here, where the [defendant] is a governmental entity." *Citizens for Responsibility and Ethics in Wash.*, 858 F. Supp. 2d at 63 (finding no exception to mootness when the government abandoned previous policy and began efforts to develop new policy); *see also Akiachak*, 827 F.3d at 106 ("[T]he mere power to reenact a challenged [rule] is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists absent evidence indicating that the challenged [rule] likely will be reenacted.'" (internal citations

omitted) (quoting *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir.

1997)).

Further, the new policy "completely and irrevocably eradicate[s] the effects of the alleged

violation." *See Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). "The determination of

whether sufficient effects [of the alleged violation] remain . . . will turn on the availability of

meaningful relief." *Indian River Cnty.*, 254 F. Supp. 3d at 21 (citations omitted). As explained

above, the policy change provides Plaintiffs with the exact injunctive relief that they seek in their

complaint. The District has implemented its new policy, provided FCA-Jackson Reed with

official recognition, and did not deny any applications from other FCA groups; thus, the Court

should dismiss as moot Plaintiffs' claims for declaratory and injunctive relief.

## II.  <u>Plaintiffs Fail To State a Fifth Amendment Due Process Claim.</u>

"Due process is flexible and calls for such procedural protections as the particular

situation demands." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (quoting *Morrissey v. Brewer*,

408 U.S. 471, 481 (1972)); *see also Lopez Bello v. Gacki*¸94 F.4th 1067, 1074 (D.C. Cir. 2024).

In other words, due process "is not a technical conception with a fixed content unrelated to time,

place, and circumstances." *Gilbert*, 520 U.S. at 930 (quoting *Cafeteria & Rest. Workers v.

McElroy*, 367 U.S. 886, 895 (1961)). "'Though the required procedures may vary according to

the interests at stake in a particular context,' 'the fundamental requirement of due process is the

opportunity to be heard at a meaningful time and in a meaningful manner.'" *Kropat v. FAA*, 162

F.3d 129, 132 (D.C. Cir. 1998) (quoting *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 261

(1987), and *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).[2] The test assumes an allegation of

some missing procedural step, which the government should have taken, and consideration of

---

[2]    For purposes of this Motion, Defendants assume Plaintiffs' interest in being a recognized student group is protected by due process. *See* Compl. ¶ 242 ("By derecognizing Jackson-Reed FCA, Defendants have infringed on Plaintiffs' constitutional rights[.]").

whether that step, if taken, may have prevented an erroneous deprivation. *Mathews*, 424 U.S. at 334–35. If the court finds for the claimant, the additional safeguard is constitutionally required; if the court finds for the government, existing procedures are sufficient. *E.g.*, *id* at 349 (holding evidentiary hearing not required before termination of benefits and that "present . . . procedures fully comport with due process").

Plaintiffs' due process claim rests on their allegations related to the DCPS grievance process. Specifically, Plaintiffs allege that an employee at Jackson-Reed filed a grievance with DCPS's Comprehensive Alternative Resolution and Equity (CARE) Team on September 29, 2022, alleging that Jackson-Reed violated anti-discrimination law and policy by "allowing [FCA], who discriminates against the [LGBTQ] community, to sponsor a club on their campus." Compl. ¶¶ 75, 77, 80. Plaintiffs also allege that based on the allegations in the grievance, FCA-Jackson Reed was informed that the group must cease operations on campus pending the outcome of the investigation. *See id.* ¶¶ 82, 84. The CARE Team's investigation of the allegations in the grievance included interviews of three individuals: the complainant, FCA-Jackson Reed's faculty advisor, and FCA-National's Vice President of Field Ministry for the Mid-Atlantic region. *Id.* ¶ 86. The CARE Team also reviewed FCA-Jackson Reed's Instagram page, the club's page on Jackson-Reed's website, an email from the complainant to Jackson-Reed's principal, and an FCA student leadership application. *Id.* The CARE investigator also asked for "follow-up information" from FCA-Jackson Reed's faculty advisor. *Id.* ¶ 87. Plaintiffs further allege that in his interview, the Vice President of Field Ministry for the Mid-Atlantic region informed the CARE Team that the leadership application that CARE reviewed was not the current version in use by the organization, and that student leader candidates were not required to sign any forms. *Id.* ¶ 88.

Plaintiffs' due process claim fails for several reasons.  To begin, Plaintiffs' own allegations demonstrate that they were provided notice and an opportunity to be heard before the final deprivation of a property or liberty interest—i.e., having their official recognition revoked. To be sure, the Complaint alleges that "Defendants failed to provide Plaintiffs notice concerning the basis for the revocation of recognized status," that "Plaintiffs were not provided with an opportunity to correct evidence that Defendants apparently used to make their decision(s)," and that "Defendants did not meaningfully reconsider their factual findings or seek additional evidence from Plaintiffs."  Compl. ¶ 245.  But these allegations are contradicted on the face of the Complaint.  First, Plaintiffs were involved in the investigation and were told that the investigation was based on alleged discrimination.  Compl. ¶¶ 82, 84 (describing "further inquiry" by FCA-Jackson Reed's faculty advisor with the CARE Team investigator); *see also* Pls.' Appl. for Prelim. Inj., Rich Decl. Ex. E [3-12] (emails between CARE Team investigator and FCA-Jackson Reed's faculty advisor noting the issue of alleged discrimination in the pledge).  Thus, Plaintiffs had notice.  Second, Plaintiffs claim that they were not given an opportunity to correct evidence, Compl. ¶ 245, but also explicitly state that they told the CARE Team investigator about the errors in the evidence, *see id.* ¶ 88.  Finally, Plaintiffs allege that Defendants did not meaningfully reconsider the factual findings or seek more evidence, but Plaintiffs fail to articulate how this was a deprivation of procedural process.  The fact is, Plaintiffs submitted multiple CARE appeals and received decisions.  Pls.' Appl. for Prelim. Inj., Rich Decl. Ex. L [3-19] (CARE Team's decision on first appeal); Pls.' Appl. for Prelim. Inj., Rich Decl. Ex. N [3-21] (CARE Team's decision on second appeal).  Just because Plaintiffs did not receive a favorable outcome does not, on its own, demonstrate a failure of due process.

Thus, Plaintiffs allegations do not, on their face, support a claim that Defendants failed to provide procedural due process.

But even if Plaintiffs' Complaint did not contain such contradictions, Plaintiffs have not alleged facts sufficient to support a procedural due process claim. Here, a faculty member filed a grievance alleging that FCA-Jackson Reed engaged in discrimination and that by allowing FCA-Jackson Reed to continue to operate on Jackson-Reed's campus, the school was permitting the discrimination of its students. *See* Compl. ¶¶ 75, 77. It is reasonable that, even before a final decision, the District temporarily pauses a student organization while it investigates such a grievance and determines whether the allegations are substantiated. Plaintiffs do not identify how their asserted interest would have faced less risk of erroneous deprivation had the District done anything differently—absent simply agreeing with Plaintiffs' position from the start. There is of course some risk of erroneous deprivation should the CARE Team temporarily halt a student organization and then determine that an allegation is unfounded. But Plaintiffs do not identify what additional procedural safeguard is necessary to prevent such a deprivation, and do not allege any facts supporting even a reasonable inference that the risk would be lessened by any additional procedural safeguards, especially considering the CARE Team upheld its initial decision in two subsequent appeals. Plaintiffs may ultimately argue that the District was wrong to enforce the Anti-Discrimination Policy the way it did against them, but that is not a failure to provide process. Plaintiffs' due process claim should be dismissed.

III.    **Chancellor Ferebee and CIO Ruiz Are Entitled to Qualified Immunity.**

Government officials are entitled to qualified immunity "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "Clearly established" means that the rule is

"settled law," "dictated by controlling authority or a robust consensus of cases of persuasive authority." *Id.* at 63 (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) and *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011)) (internal quotation marks omitted).  "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply," *id.* (citing *Reichle*, 566 U.S. at 666), and must "clearly prohibit the [official's] conduct in the particular circumstances" they face, *id.*

DCPS's former anti-discrimination policy was intended to model that upheld by the Supreme Court in *Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez*, 561 U.S. 661 (2010), so it cannot have been "clearly established" that its enforcement against Plaintiffs in this case violated their statutory or constitutional rights.  *See* Defs.' Opp'n to Pls.' App. for Prelim. Inj. [23] at 14 (citing *Martinez* as "an analogous case").  In the decade after *Martinez* was decided, a few district courts have opined to limit its holding in various contexts.  *See, e.g.*, *Business Leaders in Christ v. University of Iowa*, 360 F. Supp. 3d 885 (S.D. Iowa 2019), *aff'd in part, rev'd in part*, 991 F.3d 969 (8th Cir. 2021)); *InterVarsity Christian Fellowship/USA v. Univ of Iowa*, 408 F. Supp. 3d 960 (S.D. Iowa 2019), *aff'd*, 5 F.4th 855 (8th Cir. 2021); *InterVarsity Christian Fellowship/USA v. Bd. of Governors of Wayne State Univ.*, 413 F. Supp. 3d 687 (E.D. Mich. 2019); *InterVarsity Christian Fellowship/USA v. Bd. of Governors of Wayne State Univ.*, 534 F. Supp. 3d 785 (E.D. Mich. 2021).  But this handful of district court opinions—none of which arose in the D.C. Circuit—are simply not enough to "clearly establish" that DCPS's former policy—aimed at preventing all discrimination—violated the Religious Freedom Restoration Act (RFRA), the Equal Access Act (EAA), or the Constitution.  At the time of the CARE Team's determination in November 2022, there was no "controlling authority" or "robust consensus" of persuasive authority that would clearly establish Plaintiffs' asserted right here—

the right to discriminate in the selection of its student leaders.  And where there is "no precedent on the books" that makes clear certain conduct violates statutory or constitutional law, it cannot be "clearly established." *Taylor v. Barkes*, 575 U.S. 822, 827 (2015) (per curiam).  Although there need not be "a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.  Here, there was none.

At the time DCPS revoked Plaintiffs' status as a recognized student group, there was *no* controlling caselaw in the D.C. Circuit that would have put Defendants Ferebee and Ruiz on notice that DCPS's application of its anti-discrimination policy violated RFRA, the EAA, or the Constitution.  The most on-point case is FCA's challenge to the purported all-comers non-discrimination policy of the San Jose Unified School District.  *See Fellowship of Christian Athletes v. San Jose Unified School District Board of Education*, 82 F.4th 664 (9th Cir. 2023) (en banc).  There, as here, the court determined that the policy at issue was not "truly *exceptionless*," Mem. Op. Granting Prelim. Inj. [26] at 21 (citing *Fellowship of Christian Athletes*, 82 F.4th at 686) (emphasis original), as the policy in *Martinez* was.  But that case was not decided until 2023—too late to put DCPS on notice in 2022 of a *debate* about the legality of its policy.  *See, e.g.*, *Daugherty v. Sheer*, 891 F.3d 386, 390 (D.C. Cir. 2018) (When determining whether a right is clearly established, courts "look to cases from the Supreme Court and [the Circuit], as well as to cases from other courts exhibiting a consensus view—if there is one." (quoting *Bame v. Dillard*, 637 F.3d 380, 384 (D.C. Cir. 2011))).  Likewise, the subsequent opinion of this Court that the former policy was "not in fact . . . an all-comers policy" in the vein of *Martinez*, Mem. Op. Granting Prelim. Inj. at 21, cannot retroactively "clearly establish" its illegality.  Because "no precedent on the books" at the time DCPS's former policy was enforced against FCA clearly established that the policy violated RFRA, the EAA, or the Constitution, Defendants Ferebee and

Ruiz are entitled to qualified immunity and Plaintiffs' claims against them in their individual

capacities should be dismissed.[3]

**IV.    Plaintiffs Fail To State Any Claim Against Chancellor Ferebee In His
        Individual Capacity.**

A government official can only be held liable in his or her personal capacity for his or her

own actions, and "may not be held liable for the unconstitutional conduct of their subordinates."

*See Iqbal*, 556 U.S. at 676; *see also, e.g.*, *Elkins v. District of Columbia*, 690 F.3d 554, 565–68

(D.C. Cir. 2012) (considering whether judgment was proper against four personal-capacity

defendants, and finding defendants who were not directly involved in the alleged violation not

liable); *Jones v. Horne*, 634 F.3d 588, 602 (D.C. Cir. 2011) (affirming dismissal of personal-

capacity suit against official because the plaintiff did not allege that the official had any personal

involvement in the allegedly illegal conduct).

Here, the allegations about Chancellor Ferebee are nil.  Plaintiffs merely allege that he is

the Chancellor and chief executive of DCPS.  *See* Compl. ¶ 22.  Plaintiffs make no other

allegations specific to Chancellor Ferebee to show that he took any individualized actions that

caused Plaintiffs' alleged harms.  *See generally* Compl.  Beyond the singular paragraph

introducing Chancellor Ferebee as a party, Compl. ¶ 22, the Complaint is silent as to him;

Plaintiffs merely refer to all actions as that of "Defendants," *see generally* Compl.  Plaintiffs do

not allege that Chancellor Ferebee had any involvement with the decisions of the CARE Team

that ultimately resulted in FCA-Jackson Reed being denied official recognition at Jackson-Reed

High School; in fact, Plaintiffs do not allege any actual conduct of Chancellor Ferebee at all.  *See*

*generally* Compl.  Thus, Plaintiffs have failed to allege "that each Government-official

---

[3]      Qualified immunity applies to all of Plaintiffs' claims against Chancellor Ferebee and
CIO Ruiz with the exception of Count XII, the alleged violation of the DCHRA.

defendant, through the official's own individual actions, has violated" any constitutional or statutory right of Plaintiffs. *Iqbal*, 556 U.S. at 676. Plaintiffs' claims against Chancellor Ferebee should therefore be dismissed.

**V.    The Court Should Dismiss the Claims Against Chancellor Ferebee and CIO Ruiz in Their Official Capacities as Redundant to the Claims Against the District.**

"There is no longer a need to bring official-capacity actions against local government officials, for under *Monell* . . . local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Since the Supreme Court's decision in *Kentucky v. Graham*, courts "regularly dismiss individuals sued in their official capacity where the municipality has also been sued for the same conduct." *A.U. v. District of Columbia*, No. 19-cv-03512, 2020 U.S. Dist. LEXIS 147649, 2020 WL 4754619, at *16 (D.D.C. July 13, 2020) (citing *Day v. District of Columbia*, 894 F. Supp. 2d 1, 33 (D.D.C. 2012) ("[T]he Court is persuaded that for reasons of judicial economy and lack of prejudice there is no reason to refrain from dismissing the redundant claims against the District's officials."); *Kline v. Cleveland Cty.*, No. 19-cv-00197, 2020 U.S. Dist. LEXIS 96450, 2020 WL 2858238, at *2 (W.D.N.C. June 2, 2020) (dismissing official capacity claims as redundant of claims against the local government entity); *Grim v. Baltimore Police Dep't*, No. 18-cv-03864, 2019 U.S. Dist. LEXIS 194461, 2019 WL 5865561, at *16 (D. Md. Nov. 8, 2019) (same); *Cano v. Cohen*, No. 18-cv-11550, 2019 U.S. Dist. LEXIS 173569, 2019 WL 4933580, at *4 n.5 (S.D.N.Y. Oct. 4, 2019) (same); *Rosas v. Baca*, No. 12-cv-00428, 2012 U.S. Dist. LEXIS 37930, 2012 WL 933609, at *2 (C.D. Cal. Mar. 20, 2012) (same); *Ade v. City of Chicago*, No. 96 C 4750, 1996 U.S. Dist. LEXIS 19342, 1996 WL 745334, at *1 (N.D. Ill. Dec. 27, 1996) (same); *Good v. City of Los Angeles*, No. 15-cv-4290, 2016 U.S. Dist. LEXIS 193465, 2016 WL 9450072, at *1 (C.D.

Cal. Jan. 29, 2016) (striking official capacity claims as duplicative and wasteful under Rule 12(f) of the Federal Rules of Civil Procedure).

Plaintiffs' alleged harms can be remedied through their claims brought against the District. So, as in *A.U.* and *Day*, "the goal of judicial economy coupled with the absence of any prejudice to the plaintiffs counsel[] in favor of 'dismissing the redundant claims against the District's officials." *A.U.*, 2020 WL 4754619, at *17 (quoting *Day*, 894 F. Supp. 2d at 33). The Court should therefore dismiss the claims against Chancellor Ferebee and CIO Ruiz in their official capacities as redundant.

## CONCLUSION

For these reasons, the Court should grant Defendants' Partial Motion to Dismiss Plaintiffs' Complaint.

Dated: February 6, 2025                          Respectfully submitted,

                                                 BRIAN L. SCHWALB
                                                 Attorney General for the District of Columbia

                                                 STEPHANIE E. LITOS
                                                 Deputy Attorney General
                                                 Civil Litigation Division

                                                 */s/ Matthew R. Blecher*
                                                 MATTHEW R. BLECHER [1012957]
                                                 Chief, Civil Litigation Division, Equity Section

                                                 */s/ Honey Morton*
                                                 HONEY MORTON [1019878]
                                                 Assistant Chief, Equity Section

                                                 */s/ Amanda C. Pescovitz*
                                                 MARCUS D. IRELAND [90005124]
                                                 AMANDA C. PESCOVITZ [1735780]
                                                 Assistant Attorneys General
                                                 400 6th Street, NW
                                                 Washington, D.C. 20001

Phone: (202) 805-7495
Email: amanda.pescovitz1@dc.gov

*Counsel for Defendants*